IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

HORTICA-FLORISTS' MUTUAL
INSURANCE COMPANY                                                                    PLAINTIFF

VS.                                         CASE NO. 07-cv-1119

PITTMAN NURSERY CORPORATION,
DONNA SUE PITTMAN KING,
ARCELIA MONTIZE, EVENCIO GARCIA,
AGUSTIN GARCIA GONZALEZ,
and JOHN-MICHAEL HUNTER                                                           DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Pittman Nursery Corporation's ("PNC") Second Cross-Motion for Partial Summary Judgment. (Doc. 126). Plaintiff, Hortica-Florists' Mutual Insurance Company ("Hortica") has responded. (Docs. 131). PNC filed a reply. (Doc. 134). The Court finds this matter ripe for consideration.

### I.  BACKGROUND

PNC supplies ornamental nursery stock to building and landscape contractors and home gardeners throughout Arkansas and the South. In 2002, Hortica issued a Greenhouse Grower Business Package Policy ("Business Package Policy") to PNC, and PNC renewed the Business Package Policy each year through the coverage year ending January 1, 2008. The Business Package Policy provided a variety of insurance coverages to PNC, including the Commercial General Liability Coverage; the Employee Dishonesty Coverage; Employment Practices Liability (Claims Made) Coverage; and the Counterfeit Money, Forgery, or Alteration Coverage.

Dawood Aydani was the president and general manager of PNC and had been employed by PNC for over twenty years. However, PNC terminated Aydani's employment on June 22, 2007. After his termination, Aydani filed suit against PNC for wrongful termination, unpaid commissions, tortious interference with his 18% interest in Pittman Properties Limited Partnership #1, and violation of the Arkansas Deceptive Trade Practices Act. Hortica agreed to defend PNC under a reservation of rights. Aydani's lawsuit against PNC eventually settled and was dismissed with prejudice. In the summary judgment motion presently before the Court, PNC seeks a ruling that Hortica had a duty to defend PNC in the Aydani litigation.

## II.  SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at

249. A party opposing a motion for summary judgment "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III.  DISCUSSION

Generally, the duty to defend is "determined by comparing the allegations in the underlying complaint to the scope of the coverage provided by the insurance policy." *Cooley v. State Farm Fire and Cas. Co.*, 656 F. Supp. 2d 924, 926 (E.D. Ark. 2009) (citing *Insurance Co. of North Am. v. Forrest City Country Club*, 819 S.W.2d 296 (Ark. 1991)). "It is the allegations made against the insured, however groundless, false, or fraudulent such allegations may be, that determine the duty of the insurer to defend the litigation against its insured." *Madden v. Continental Cas. Co.*, 53 Ark. App. 250, 922 S.W.2d 731, 734 (1996). If an injury or damage is within the policy coverage and could result in a lawsuit, the duty to defend arises. *Id*. In other words, the duty to defend arises where there is a possibility that the injury or damages may fall within the policy coverage. *Medical Liability Mutual Ins. Co. v. Alan Curtis, LLC*, 519 F.3d 466, 476 (8th Cir. 2008) (applying Arkansas law). "Any ambiguity in the policy must be construed in favor of the insureds, and if the policy can reasonably be interpreted to encompass some of the claims, the insurer is obligated to provide the insured with a defense." *Id*. (citing *Murphy Oil USA Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 814 (Ark. 2001)).

Under the Employment Practices Liability (Claims Made) Coverage ("Employment Practices Coverage"), Hortica agrees to pay "those amounts the INSURED is legally required to pay by reason of a CLAIM brought against any INSURED for a WRONGFUL EMPLOYMENT PRACTICE to which this insurance applies." The Employment Practices Coverage states that Hortica has the right

and duty to defend any claim brought against PNC for a wrongful employment practice to which the insurance applies. "Wrongful Employment Practice," as defined by the policy, includes the following actions: actual or alleged wrongful dismissal, retaliatory discharge, employment related misrepresentation to an employee, and interference with an employment contract by an insured against an employee.[1] However, the Employment Practices Coverage excludes from coverage "[a]ny damages arising out of any 'written employment contract.'"

Hortica advised PNC that Hortica denied coverage as to Aydani's first claim, which is his claim for non-payment of commissions. Hortica's stated reason for denying coverage was that the claim alleged a violation of a written agreement, and the Employment Practices Coverage purports to exclude from coverage any damages arising out of a written employment contract. However, based on the other counts asserted, Hortica agreed to defend PNC in the Aydani lawsuit under a reservation of rights based on the Employment Practices Coverage. In its response and brief to the summary judgment motion at issue, Hortica makes no other arguments as to why it had no duty to defend in the Aydani lawsuit under the Employment Practices Coverage.

In his lawsuit, Aydani claims that he was wrongfully terminated by PNC. Wrongful termination falls squarely within the policy definition of a "wrongful employment practice"; therefore, it seems probable that Aydani's wrongful termination claim against PNC is covered by the Employment Practices Coverage. Because of the possibility that at least one of Aydani's claims is covered by the policy, Hortica had a duty to defend PNC in the Aydani lawsuit.

---

[1] The policy definition of "wrongful employment practice" includes several other specifically named actions as well.

## IV.  CONCLUSION

For the reasons discussed herein, the Court finds that Hortica had a duty to defend PNC in the Aydani lawsuit.  Accordingly, PNC's Second Cross-Motion for Partial Summary Judgment (Doc. 126) is **GRANTED** as it relates to Hortica's duty to defend PNC in the Aydani lawsuit.[2]  An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, this 30th day of August, 2010.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

---

[2] In PNC's motion, it also moved the Court to declare that Hortica has a duty to defend PNC in the ongoing lawsuit styled *Hunter v. Pittman Nursery Corporation*, No. 1:07-CV-01112, which was filed in this Court on November 16, 2007.  However, the Court has already decided this issue.  On March 2, 2010, the Court issued an order finding that Hortica has a duty to defend PNC in the Hunter lawsuit.