IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| HORTICA - FLORISTS' MUTUAL INSURANCE COMPANY | § | |
| Plaintiff, | § | |
| V. | § | Case No. 07-1119 |
| PITTMAN NURSERY CORPORATION, DONNA SUE PITTMAN KING, DAWOOD AYDANI, ARCELIA MUNIZ, EVENCIO GARCIA, AGUSTIN GARCIA GONZALEZ, and JOHN-MICHAEL HUNTER, | § | |
| Defendants. | § | |

**DEFENDANTS PITTMAN NURSERY CORP. AND DONNA SUE PITTMAN KING'S**
**SECOND AMENDED ANSWER AND COUNTERCLAIM**

Defendants, Pittman Nursery Corporation ("Pittman Nursery") and Donna Sue Pittman King ("Mrs. Pittman King") (together referred to as "Defendants"), file this Second Amended Answer and Counterclaim to Plaintiff Hortica-Florists' Mutual Insurance Company's ("Plaintiff" or "Hortica") Second Amended Complaint ("Complaint") as follows:

## I. ADMISSIONS AND DENIALS

1. The allegation in paragraph 1 requires no response.

2. The allegation in paragraph 2 requires no response.

3. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.

4. Defendants admit the allegations in paragraph 4.

5. Defendants admit the allegations in paragraph 5.

6. Defendants admit the allegations in paragraph 6.

7. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

8. Defendants admit the allegations in paragraph 8.

9. Defendants admit the allegations in paragraph 9.

10. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13. Defendants admit the allegations in paragraph 13.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15. Defendants admit the allegation in paragraph 15.

16. Defendants admit the allegation in paragraph 16.

17. Defendants admit the allegation in paragraph 17, except to deny that Exhibit 1 is a true and correct copy of the complete policy.

18. Defendants admit the allegation in paragraph 18.

19. In answer to the allegations in paragraphs 19 through 27, Defendants admit that Hortica issued Policy No. BP-09496 to Pittman Nursery, a substantially complete copy of which Hortica attached as Exhibit 1 to its Complaint, and admit that Policy No. BP-09496 provides Commercial General Liability Coverage. Defendants say that Policy No. BP-09496 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations

about said policy. Defendants deny that this policy, or Hortica's excerpts from the policy, provides the full extent of coverage or of Defendants' rights.

20. In answer to the allegations in paragraphs 28 through 37, Defendants admit that Hortica issued Policy No. BP-09496 to Pittman Nursery, a substantially complete copy of which Hortica attached as Exhibit 1 to its Complaint, and admit that Policy No. BP-09496 provides Employee Dishonesty Coverage. Defendants say that Policy No. BP-09496 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said policy. Defendants deny that this policy, or Hortica's excerpts from the policy, provides the full extent of coverage or of Defendants' rights.

21. In answer to the allegations in paragraphs 38 through 44, Defendants admit that Hortica issued Policy No. BP-09496 to Pittman Nursery, a substantially complete copy of which Hortica attached as Exhibit 1 to its Complaint, and admit that Policy No. BP-09496 provides Employment Practices Liability Coverage. Defendants say that Policy No. BP-09496 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said policy. Defendants deny that this policy, or Hortica's excerpts from the policy, provides the full extent of coverage or of Defendants' rights.

22. In answer to the allegations in paragraph 45, Defendants admit that Hortica issued a Business Excess Policy No. EX07193 to Pittman Nursery, a substantially complete copy of which Hortica attached as Exhibit 7 to its Complaint. Defendants say that Policy No. EX07193 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said policy. Defendants deny that this policy, or Hortica's excerpts from the policy, provides the full extent of coverage or of Defendants' rights.

23. Defendants admit the allegations in paragraph 46.

24. In answer to the allegations in paragraph 47, Defendants admit that Pittman Nursery received a Notice of Nonrenewal of Insurance pertaining to Policy No. EX07193 substantially in the form shown at Exhibit 11 to Plaintiff's Complaint. The rest of the allegations in paragraph 47 state a legal conclusion (that the alleged cancellation was "effective") and require no response. To the extent the rest of the allegations in paragraph 47 require a response, the allegations are denied.

25. In answer to the allegations in paragraphs 48 through 54, Defendants admit that Hortica issued Policy No. EX07193 to Pittman Nursery, a substantially complete copy of which Hortica attached as Exhibit 7 to its Complaint. Defendants say that Policy No. BP-09496 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said policy. Defendants deny that this policy, or Hortica's excerpts from the policy, provides the full extent of coverage or of Defendants' rights.

26. The allegation in paragraph 55 requires no response.

27. Defendants admit the allegations in paragraph 56.

28. In answer to the allegations in paragraphs 57-59, Defendants say that the Complaint filed in Case No. CV-2007-106-4 (the "PPLP #1 litigation") speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said document and all remaining allegations in paragraphs 57-59. Defendants further deny the truth of the substantive allegations in said Complaint.

29. Defendants admit the allegations in paragraph 60.

30. Defendants admit the allegations in paragraph 61.

31. The allegations in paragraph 62 state a legal conclusion and therefore no response is required. To the extent a response is required, Defendants deny the allegations.

32. In answer to the allegations in paragraph 63, Defendants deny that Hortica has no obligation to defend or indemnify Pittman Nursery in connection with the PPLP #1 litigation. Regarding subparagraphs a, b, f and g, the Complaint filed in Case No. CV-2007-106-4 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations. The allegations in subparagraphs a, b, c, e, f, and g state legal conclusions regarding Hortica's interpretation of the policies described and therefore no response is required; however, to the extent a response to the allegations of subparagraphs a, b, c, e, f, and g is required, Defendants deny the allegations. Regarding subparagraph d, Hortica's allegations are vague and ambiguous in the use of the terms "submitted," and "any records" in that Hortica does not specify to whom it contends no police report or "any records" were submitted or what records may be included and, therefore, Defendants deny these allegations.

33. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (d) on page 25 of its Complaint.

34. The allegation in paragraph 64 requires no response.

35. Defendants admit the allegation in paragraph 65.

36. In answer to the allegations in paragraph 66, Defendants say that the Complaint filed in Case No. CV-2007-107-4 (the "Aydani litigation") speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said document and all remaining allegations in paragraph 66. Defendants further deny the truth of the substantive allegations in said Complaint.

37. Defendants admit the allegation in paragraph 67.

38. Defendants admit the allegation in paragraph 68 to the extent that such a communication occurred and Hortica agreed to defend Pittman Nursery; however, Defendants

deny that the communication used the phrase "subject to the retention, coverage limits, and general conditions of the policy." Further, allegations in paragraph 68 about the legal effect of such communication state a legal conclusion, and, therefore, no response is required. To the extent a response is required, the legal effect of the communication and the rest of paragraph 68 is denied.

39. The allegation in paragraph 69 states a legal conclusion and therefore no response is required. To the extent a response is required, Defendants admit the allegations except to deny that the litigation is "pending."

40. In answer to the allegations in paragraph 70, Defendants deny that Hortica has no obligation to defend or indemnify Pittman Nursery in connection with the *Aydani* litigation. Regarding subparagraphs a, b, and f, the Complaint filed in Case No. CV-2007-107-4 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations. The allegations in subparagraphs a, b, c, e, and f state legal conclusions regarding Hortica's interpretation of the policies described and therefore no response is required; however, to the extent a response to the allegations of subparagraphs a, b, c, e, and f is required, Defendants deny the allegations. Regarding subparagraph d, Hortica's allegations are vague and ambiguous in the use of the terms "submitted," and "any records" in that Hortica does not specify to whom it contends no police report or "any records" were submitted or what records may be included and, therefore, Defendants deny these allegations.

41. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (d) on pages 28 and 29 of its Complaint.

42. The allegation in paragraph 71 requires no response.

43. Defendants admit the allegation in paragraph 72.

44. In answer to the allegations in paragraph 73, Defendants say that the Amended Complaint filed in Case No. CV-07-1053 (the "*Feazell* litigation") speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said document and all remaining allegations in paragraph 73. Defendants further deny the truth of the substantive allegations in said Amended Complaint.

45. Defendants admit the allegations in paragraph 74.

46. Defendants admit the allegation in paragraph 75.

47. The allegations in paragraph 76 states a legal conclusion and therefore no response is required. To the extent a response is required, Defendants deny the allegations.

48. In answer to the allegations in paragraph 77, Defendants deny that Hortica has no obligation to defend or indemnify Pittman Nursery in connection with the *Feazell* litigation. Regarding subparagraphs a, b, c and g, the Complaint filed in Case No. CV-07-1053 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations. The allegations in subparagraphs a, b, c, d, f, and g state legal conclusions regarding Hortica's interpretation of the policies described and therefore no response is required; however, to the extent a response to the allegations of subparagraphs a, b, c, d, f, and g is required, Defendants deny the allegations. Regarding subparagraph e, Hortica's allegations are vague and ambiguous in the use of the terms "submitted," and "any records" in that Hortica does not specify to whom it contends no police report or "any records" were submitted or what records may be included and, therefore, Defendants deny these allegations.

49. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (d) on pages 32 and 33 of its Complaint.

50. The allegation in paragraph 78 requires no response.

51. Defendants admit the allegations in paragraph 79.

52. In answer to the allegations in paragraph 80, Defendants say that the Complaint filed in Case No. CV-07-1073 (the "*Muniz* litigation") speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said document and all remaining allegations in paragraph 80. Defendants further deny the truth of the substantive allegations in said Complaint.

53. Defendants admit the allegations in paragraph 81.

54. Defendants admit the allegation in paragraph 82 to the extent that such a communication occurred; however, Defendants deny that the communication used the phrase "subject to the retention, coverage limits, and general conditions of the policy." Further, allegations in paragraph 82 about the legal effect of such communication state a legal conclusion, and, therefore, no response is required. To the extent a response is required, the legal effect of the communication and the rest of paragraph 82 is denied.

55. The allegations in paragraph 83 state a legal conclusion and therefore no response is required. To the extent a response is required, Defendants admit the allegations except Defendants deny that there is yet a justiciable controversy as to indemnity under the policies in connection with the pending *Muniz* litigation—because, for example, liability has not yet been determined in that case.

56. In answer to the allegations in paragraph 84, Defendants deny that Hortica has no obligation to defend or indemnify Pittman Nursery in connection with the *Muniz* litigation. Regarding subparagraphs a, b, c, d, e and i, the Complaint filed in Case No. CV-07-1073 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations. The allegations in subparagraphs a, b, c, d, e, g, h and i state legal conclusions

regarding Hortica's interpretation of the policies described and therefore no response is required; however, to the extent a response to the allegations of subparagraphs a, b, c, d, e, g, h and i is required, Defendants deny the allegations. Regarding subparagraph g, Hortica's allegations are vague and ambiguous in the use of the terms "submitted," and "any records" in that Hortica does not specify to whom it contends no police report or "any records" were submitted or what records may be included and, therefore, Defendants deny these allegations.

57. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (e) on pages 37 and 38 of its Complaint.

58. The allegation in paragraph 85 requires no response.

59. Defendants admit the allegation in paragraph 86.

60. In answer to the allegations in paragraph 87, Defendants say that the Complaint filed in Case No. CV-2007-179-6 (the "*Hunter* litigation") speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations about said document and all remaining allegations in paragraph 87. Defendants further deny the truth of the substantive allegations in said Complaint.

61. Defendants admit the allegations in paragraph 88.

62. Defendants admit the allegation in paragraph 89 to the extent that such a communication occurred. However, the legal effect of the letter states a legal conclusion, and therefore no response is required.

63. The allegations in paragraph 90 state a legal conclusion and therefore no response is required. To the extent a response is required, Defendants admit the allegations.

64. In answer to the allegations in paragraph 91, Defendants deny that Hortica has no obligation to defend or indemnify Pittman Nursery in connection with the Hunter litigation.

Regarding subparagraphs a, b, c, and g, the Complaint filed in Case No. CV-2007-179-6 speaks for itself, and except as said document expressly so states, Defendants deny Hortica's allegations. The allegations in subparagraphs a, b, c, d, f and g state legal conclusions regarding Hortica's interpretation of the policies described and therefore no response is required; however, to the extent a response to the allegations of subparagraphs a, b, c, d, f and g is required, Defendants deny the allegations. Regarding subparagraph e, Hortica's allegations are vague and ambiguous in the use of the terms "submitted," and "any records" in that Hortica does not specify to whom it contends no police report or "any records" were submitted or what records may be included and, therefore, Defendants deny these allegations.

65. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (d) on pages 40 and 41 of its Complaint.

66. The allegation in paragraph 92 requires no response.

67. Defendants admit the allegation in paragraph 93.

68. Defendants admit the allegation in paragraph 94.

69. Defendants admit the allegation in paragraph 95 to the extent that Hortica refers to advance consent or authorization of services shown on the invoices referred to in paragraphs 93 and 94 and only to the extent that Hortica means advance consent or authorization separate and distinct from that express or implied in the policies at issue. All other claims are denied.

70. Defendants admit the allegation in paragraph 96.

71. The allegation in paragraph 97 states a legal conclusion and therefore no response is required. To the extent a response is required, Defendants admit the allegation.

72. The allegation in paragraph 98 states a legal conclusion regarding Hortica's interpretations of the policies described and therefore no response is required. If the allegations do require a response to any extent, Defendants deny the allegations.

73. Defendants deny that Hortica is entitled to any of the relief requested in the unnumbered paragraphs (a) through (d) on page 42 of its Complaint.

74. All other matters requiring admission or denial but not specifically admitted or denied in this answer are denied.

## II. DEFENSES

Pittman Nursery and Mrs. Pittman King raise the following affirmative and other defenses, reserving their rights to amend as necessary.

1. **Voluntary payment.** Hortica has alleged that it (1) has been paying on demand to defend Pittman Nursery in one or more of the litigations at issue and (2) was not legally obligated to do so. When one pays money on a demand that is not legally enforceable, the payment is deemed voluntary, and, absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered. For this and other reasons, Hortica has no right to recover payments made to defend Pittman Nursery in any of the litigations at issue.

2. **Factual Issues.** Plaintiff cannot obtain a declaratory judgment on the pleadings when the judicial determination it requests requires resolution of factual issues.

3. **Justiciable Controversy.** No justiciable controversy presently exists with respect to any indemnity issues where liability has not been determined or settlement reached in the underlying lawsuits. No justiciable controversy presently exists for Mrs. Pittman King with respect to those cases in which she was not—or has not yet—been named a defendant. No justiciable controversy exists with respect to the PPLP#1 litigation or *Feazell* litigation—as

Hortica knows and has judicially admitted at pages 11 to 12 of its Brief in Support of Hortica-Florists' Mutual Insurance Company's Motion for Partial Summary Judgment (Document #97 ).

4. **Waiver and Estoppel.** Hortica was fully aware of the facts of the pending litigations and knew that Pittman Nursery had not paid any deductible when Hortica assumed the defense of the litigations at issue and hired and paid lawyers to defend Pittman Nursery, subject to a reservation of rights. Hortica did not allow Pittman Nursery to choose its own counsel, but instead insisted that Pittman Nursery use Hortica-hired lawyers.

5. When an insurer, subject to a reservation of rights, hires lawyers to defend an insured, there is an inherent conflict of interests, which the insurer must disclose to the insured. Hortica failed to disclose the conflict of interests.

6. Hortica represented to Pittman Nursery that the Hortica-hired lawyers would provide Pittman Nursery with a suitable defense. Hortica intended that Pittman Nursery accept, rely on, and acquiesce in the attorneys and defense provided by Hortica. To its detriment, Pittman Nursery reasonably relied on the Hortica-hired attorneys and on Hortica's representations and omissions.

7. The Hortica-hired, -paid, and -controlled attorneys in the *Muniz* litigation failed to file motions to dismiss under Federal Rule of Civil Procedure 12(b)—which motions must be filed before pleading. Motions to dismiss on some of the causes of action (e.g., RICO) would be standard practice for any competent defense. Further, several causes of action were so poorly-pled that any competent defense would include a motion for dismissal pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Finally, the Hortica-hired lawyers should have moved to dismiss all of the non-FLSA causes of action based on precedent—much of it tailor-made to

the fact pattern in the *Muniz* litigation—which holds that Fair Labor Standards Act (FLSA) actions preempt all other causes of action based on the same facts.

8. The *Muniz* plaintiffs pleadings are so poorly drafted that there may be other causes of action that the plaintiffs will claim to have asserted (e.g., they seemed to want to state a claim under the Agricultural Workers Protection Act which is not available to them as a matter of law but which they reference nonetheless) which should have been attacked with a 12(b) motion and possibly a 12(e) motion for more definite statement.

9. Despite the *Muniz* plaintiffs' judicial admission that they voluntarily "returned year after year" knowing that Defendant Aydani would demand payments and facts suggesting that many of the plaintiffs voluntarily subjected themselves to Aydani's allegedly-tortious acts, the Hortica-hired counsel failed to assert the defenses of waiver, laches, ratification, voluntary payment, assumption of risk, contributory and/or comparative negligence, estoppel, and failure to mitigate damages.

10. Hortica-hired counsel in the *Muniz* litigation also failed to file motions for judgment on the pleadings and/or summary judgment motions that would have been appropriate on one or more of the alleged causes of action.

11. Hortica was informed by one or more means of deficiencies in the defense provided the Hortica-hired lawyers. Nonetheless, when the *Muniz* plaintiffs filed an amended pleading adding claims for negligent supervision, the Hortica-hired attorneys failed to use that renewed opportunity to assert the appropriate defenses and to have the improperly-pleaded causes of action dismissed.

12. Because of the failure to take these actions, Pittman Nursery lost opportunities to have many causes of action stricken early in the *Muniz* litigation and has been forced to pay out-of-pocket to hire new lawyers to correct the deficiencies of the Hortica-provided defense.

13. Not only did the Hortica-hired lawyers fail to provide a robust defense, but they also acted directly adverse to Pittman Nursery's interests in the *Muniz* litigation in order to advance Hortica's claims in this action against Pittman Nursery.

14. For example, insurance companies commonly argue that intentional acts are not accidental and therefore not covered by policies. Indeed, Hortica has made precisely that argument in this case—an argument which would be undermined by allegations in the *Muniz* case that Pittman Nursery's culpability, if any, was negligent and not willful.

15. The Hortica-hired lawyers had to know this and, indeed, were informed of this fact when the *Muniz* plaintiffs first proposed filing an amended pleading. At that time, the *Muniz* lawyers explained to the Hortica-hired lawyers that the amended pleading would include a claim for negligent supervision, which would likely strengthen Pittman Nursery's coverage arguments in this case. Yet, the Hortica-paid lawyers—supposedly hired under the policy to advance Pittman Nursery's interests—not only stated that they would oppose a motion to amend pleadings, but then proceeded to write a letter, billed to Pittman Nursery, but adopting Hortica's position in this case that there is no coverage.

16. Coupled with Hortica's reservation of rights, these actions by the Hortica-hired lawyers attempting to block a result where Pittman Nursery might be found negligently—as opposed to intentionally—involved in Aydani's alleged malfeasance puts Hortica and Pittman Nursery into a conflict of interest situation, because a finding of intentional involvement would

be a potentially good thing for Hortica, but a bad thing for Pittman Nursery, while a finding of unintentional involvement would be good for Pittman Nursery and bad for Hortica.

17. In sum, Pittman Nursery relied on the defense insisted on and supplied by Hortica, and, in doing so, lost defenses and other opportunities to outright defeat claims or to settle the *Muniz* litigation. The failures of the Hortica-hired lawyers have frustrated settlement because the plaintiffs—without the education that appropriate Rule 12(b), 12(c) 12(e), and/or 56 motions would have rendered—seem to believe that they have a practically infinite number of injuries and concomitant routes to recovery. This has resulted in the seemingly endless prolonging of both this and the *Muniz* litigation at considerable expense to Pittman Nursery.

18. Hortica has also frittered away on its chosen lawyers nearly $100,000 that Pittman Nursery was entitled to, under the policies, to finance a proper defense—which sum was more than adequate to defend or settle the *Hunter* litigation and may have been adequate to defend or settle the *Muniz* litigation if the Hortica-hired lawyers had mounted a proper defense and gotten early favorable rulings on the motions they should have filed.

19. Therefore, Pittman Nursery has been compelled, at great cost, to hire independent counsel to identify and attempt to rectify the errors of the Hortica-hired counsel.

20. Thanks to the efforts of the new lawyers hired by Pittman Nursery, Pittman Nursery has entered into a settlement agreement with the *Muniz* Plaintiffs for settlement of all claims.

21. Although its analysis of the files turned over by the Hortica-hired lawyers is not complete, Pittman Nursery has discovered that the Hortica-hired lawyers not only failed to address the directly pled claims (e.g., RICO) as described above, but also that the Hortica-hired lawyers spent defense monies on irrelevant research and analysis, for example, delving into the

policies at issue in this matter in order to argue that there is no coverage (an argument directly adverse to the interests of both Pittman Nursery and Mrs. Pittman King) and composing memoranda and/or letters opining on various aspects of the Agricultural Workers Protection Act—without noticing that it does not apply to these plaintiffs as a matter of law or moving to dismiss or for clarification.

22. As a result of these and other inadequacies and conflicts of interest of the counsel provided and controlled by Hortica, Hortica is estopped from denying coverage, a defense, or indemnity to Pittman Nursery in the *Muniz* case.

23. **Vague and Ambiguous Terms and Provisions.** The policies at issue are vague and ambiguous in that certain terms are left undefined, other terms are given inconsistent definitions, and terms applied in context are unclear and open to contrary interpretations. Under Arkansas law for interpreting an insurance policy, all doubts must be resolved and all ambiguities construed in favor of the insured. Therefore, all doubts and ambiguities in the policies at issue must be construed in favor of Pittman Nursery and Mrs. Pittman King. These doubts and ambiguities include but are not necessarily limited to the following:

24. MONEY and SECURITIES are specifically included as PERSONAL PROPERTY covered in the Employee Dishonesty optional property coverage, yet the definition of PERSONAL PROPERTY in the glossary states that it excludes MONEY and SECURITIES.

25. The Employee Dishonesty optional property coverage covers the damage or loss to business personal property resulting from dishonest acts committed by any of Pittman Nursery's employees, yet it states that it "does not apply to any EMPLOYEE immediately upon discovery by [the insured] . . . of any dishonest act committed by that EMPLOYEE before or after being hired by [the insured.]"

26. The section on Special Property Coverages states that it will cover "reasonable legal expense that YOU incur to defend a suit" but does not specify what is considered a reasonable legal expense. Further, it is unclear and ambiguous as to what is meant by “this Schedule of Coverage.” “This” normally refers to the thing immediately at hand, in this case the schedule marked BP-G (3/00) in which the only limit is that the expense be “reasonable.” Accordingly, it is reasonable to read the coverage to have only that limit; whereas Hortica argues that “this Schedule of Coverage” means schedule BPP-DEC (03/00).

27. The “claims made” policy states that the obligation to pay “applies only to the amount of LOSS in excess of the Retention shown in Item V of the Declarations;” however, no Item V appears in the Declarations, and “Retention” is not defined in the glossaries or anywhere else in the policy.

28. The policy refers to “accident” in its definition of an “occurrence,” but does not define "accident" or state whether the accident is from the standpoint of the actor or the insured.

29. The Commercial General Liability coverage applies to property damage, but excludes damage intentionally caused by the insured. The insured is defined to include the named insured, here Pittman Nursery, as well as its officers and directors, but only with respect to their duties as officers and directors. The insured also includes employees acting within the scope of their employment or while performing duties related to the conduct of the insured’s business. However, the policy is ambiguous as to whether actions of an officer, director, or employee, which would exclude that person from being an insured would also defeat coverage for the named insured, here Pittman Nursery.

30. Under the Commercial General Liability coverage and Excess Policy, Hortica expressly promises to pay for “property damage” defined as the “Loss of use of tangible property

that is not physically injured." However, no definition of the term "tangible property" is provided, thus creating an ambiguity under the contract, e.g., as to whether cash money constitutes tangible property. The Court has resolved this ambiguity in favor of Pittman Nursery by holding that cash money constitutes "tangible property."

31. The Alteration Coverage portion of the insurance policy is ambiguous as to whether an employment contract constitutes a "written promise of payment of money."

32. The Employment Practices Coverage expressly covers "interference with [an] employment contract," but purports to exclude "damages arising out of any written employment contract." Thus, the policy is ambiguous with respect to claims arising out of an employment contract. The Court has now interpreted the policy in favor of finding coverage.

33. **Failure to Mitigate Damages.** Hortica has failed to mitigate its damages and is therefore barred from recovery on its claims in whole or in part.

34. **Doctrine of Unclean Hands.** Hortica's recovery is barred by the doctrine of unclean hands.

35. **Breach of Contract.** Hortica's recovery is barred by its own breaches of the insurance contracts.

36. **No Concession.** By here asserting the failures of Hortica-hired counsel in the *Muniz* litigation to take proper defensive measures, Pittman Nursery does not mean or intend to concede that the *Muniz* plaintiffs have met their discovery or pleading obligations (e.g., the fair notice pleading standards) overall or for any particular cause of action. Nor does Pittman Nursery concede any allegations in any of the underlying suits.

37. **Reservation of Rights.** Hortica has not cooperated in discovery in this matter, but has instead refused to produce documents relevant to the defense and counterclaims of

Pittman Nursery and Mrs. Pittman King. The Court has now granted Pittman Nursery's Motion to Compel and ordered Hortica to produce to Pittman Nursery "all documents responsive to PNC's First Request for Production." Doc. 146. at p. 2. Pittman Nursery and Mrs. Pittman King plead, and reserve their rights to plead by amendment, such other defenses as cannot be anticipated at this time, but which may become apparent and applicable during the course of the lawsuit, by reason of future discovery, allegations and answers of the other parties, or any other reason.

## III. COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Pittman Nursery asserts compulsory and other counterclaims for declaratory relief, for breach of contract, for the tort of bad faith, for breach of fiduciary duties, for negligent claims handling and negligence, and for promissory estoppel. Mrs. Pittman King joins in the following counterclaims only as specified below. Pittman Nursery and Mrs. Pittman King would respectfully show the Court as follows.

### A. Background Facts

1. Defendant Pittman Nursery provides plants to a number of large and small retailers throughout the country.

2. Mrs. Pittman King currently serves as president of Pittman Nursery Corporation.

3. Pittman Nursery has faced or currently faces litigation in state and/or federal court encompassing a wide variety of allegations.

4. Pittman Properties Limited Partnership #1 filed suit against Pittman Nursery and Mrs. Pittman King in state court in Columbia County, Arkansas on or about June 26, 2007, alleging *inter alia* failure to pay certain rents. Pittman Nursery and Mrs. Pittman King denied the allegations and prepared counterclaims. That suit has since settled.

5. Dawood Aydani filed suit against Pittman Nursery in state court in Columbia County, Arkansas on or about June 27, 2007. That suit has also settled. Aydani alleged breach of an agreement to pay certain commissions, wrongful termination, a Deceptive Trade Practices Act claim, and tortious interference with his ownership interest in Pittman Properties Limited Partnership #1. On August 2, 2007, Hortica agreed to defend Pittman Nursery in that lawsuit. In this case, Hortica has admitted that it originally agreed to defend the *Aydani* litigation. *See, e.g.*, Plaintiff's Resp. to Separate Motion to Dismiss of Dawood Aydani, ¶ 3. Despite Hortica's agreement to pay for the defense, Pittman Nursery and Mrs. Pittman King spent funds defending the *Aydani* litigation, which Hortica has not reimbursed.

6. Bill Feazell filed suit on behalf of the Voting Trust owning Pittman Nursery Corporation against Pittman Properties Limited Partnership #1, D&M Pittman, Inc., Dawood Aydani, and Pittman Nursery Corporation in the United State District Court for the Western District of Arkansas. The original complaint was filed on or around June 15, 2007, and Pittman Nursery Corporation became a party through an amendment on or around June 21, 2007. That suit has since settled. The suit alleged contract claims, trademark infringement, and misrepresentation, fraud, and conversion. Hortica initially accepted coverage and defense of this action.

7. Arcelia Muniz, Evencio Garcia, and Agustin Garcia Gonzalez ("*Muniz* plaintiffs") filed a putative class action suit ("*Muniz* litigation") against Pittman Nursery, Dawood Aydani, and others in the United States District Court for the Western District of Arkansas alleging *inter alia* violations of the Fair Labor Standards Act (FLSA) and the Racketeer Influenced and Corrupt Organizations Act (RICO). Subsequently, the *Muniz* plaintiffs amended their complaint

to include a claim for negligent supervision. Mrs. Pittman King is not named as a defendant in the *Muniz* litigation.

8. The *Muniz* plaintiffs allege that Dawood Aydani and others solicited $1,000.00 cash money payments as so-called "kickbacks" demanded in exchange for a right to work. Their complaint and amended complaint suggest that the alleged "kickbacks" were accompanied by threats and abuse of the workers and also state that many of the workers returned year after year, each time paying the so-called "kickbacks." The relevant time frame as alleged is 2004 to the time of filing suit, August 23, 2007. This lawsuit is still pending.

9. Hortica has repeatedly stated that it would defend Pittman Nursery in the *Muniz* litigation, subject to a reservation of rights; however, the attorneys that it hired for this purpose failed to mount an adequate defense and repeatedly took or failed to take actions, which acts and omissions indicate that they placed Hortica's interests above those of what by law should be their true client, Pittman Nursery. Certain acts and omissions of the Hortica-hired lawyers are detailed above in the section of the Answer, titled "Defenses" which allegations are adopted and incorporated for the Counterclaim as though repeated in their entirety here.

10. When Pittman Nursery demanded that the Hortica-hired lawyers be replaced by Pittman Nursery's chosen counsel, Hortica at first refused to pay—despite unequivocal Arkansas law that, in cases of conflict, the insured has an absolute right to its choice of counsel, which the insurer must pay for under its duty to defend. When this Arkansas law was pointed out to Hortica, Hortica agreed to pay reasonable attorneys' fees to defend Pittman Nursery in the *Muniz* litigation—but failed to do so.

11. Instead, in June 2009, Hortica attempted—without Pittman Nursery's consent—to effect an accord and satisfaction against Pittman Nursery by sending a small-denomination check marked "Balance of Coverage Under Employment Practices Coverage."

12. In further violation of its contractual duties and written promises, in August 2009, Hortica attempted to intervene in the *Muniz* litigation in order to contest the reasonableness of attorneys' fees and Pittman Nursery's right to the counsel of its choice—thus further driving up the costs of defending that action.

13. In short, despite the clear law on its obligations and its promises to follow that law, Hortica has shamelessly violated its duty—apparently with the goal of undermining Pittman Nursery by overburdening it with defense costs that Hortica is obligated to bear.

14. John-Michael Hunter ("Hunter") filed suit (the "*Hunter* litigation") against Pittman Nursery in state court in Columbia County, Arkansas on or about October 23, 2007, alleging that Pittman Nursery breached an alleged "employment contract" in terminating Hunter and failing to pay commissions allegedly promised pursuant to that supposed contract. Mrs. Pittman King was not named as a defendant in the *Hunter* litigation. The "employment contract," filed as an exhibit to, and integrated part of, the complaint in the *Hunter* litigation, was a forged document which on its face suggested questionable authenticity, and Pittman Nursery refused to pay or defend on the basis that it had been forged. This lawsuit is still pending.

15. When Hunter first contacted Pittman Nursery threatening to sue, the Hortica-hired lawyer stated his belief that the "contract" was not authentic and actively assumed defense of the action by writing to opposing counsel regarding the matter. Hortica ratified this action by paying for it and representing to Pittman Nursery that this payment was made pursuant to its defense obligations under the policies.

16. Hunter himself had previously presented his bogus contract to the Arkansas Department of Workforce Services and Arkansas Appeal Tribunal—each of which had been so singularly unimpressed by the forged document that they rendered administrative decisions against Hunter. Further, Hortica has been informed of sworn statements by the witness who typed the "contract" that she prepared it four months after it was supposedly signed. In sum, the document is unquestionably a forged promise of payment.

17. Pittman Nursery purchased insurance from Hortica including a Greenhouse Grower Business Package ("BP-09496"), which included Commercial General Liability coverage, an Employment Practices Liability Endorsement, and optional Employee Dishonesty coverage. Additionally, Pittman Nursery purchased a Business Excess Policy ("Excess Policy").

18. At the time Pittman Nursery purchased the policy, Hortica represented a special knowledge of Pittman Nursery's area of business and further represented that the Greenhouse Grower Business Package would provide the necessary coverage.

19. These policies provide coverage that require Hortica to defend and indemnify Pittman Nursery and Mrs. Pittman King in the currently pending and settled lawsuits.

20. Hortica has declared its belief that it has no obligation to defend or indemnify with regard to any of the lawsuits.

21. On March 2, 2010, this Court denied a partial motion for summary judgment filed by Hortica—in which Hortica sought to avoid its duty to defend Pittman Nursery—and held that Hortica has a duty to defend Pittman Nursery in the *Muniz* and *Hunter* litigations.

22. On March 15, 2010, this Court entered an order in the *Muniz* litigation dismissing all of the Plaintiffs' causes of action with the exception of their FLSA claims.

23. Despite the Court's coverage ruling, Hortica continued to deny coverage of the *Muniz* litigation, writing in a letter, signed by Jud Ankrom and dated March 17, 2010, as follows:

> "While we continue to research whether the Hortica policies afford any coverage to the FLSA claim, it does not appear so at this time. I will correspond with you once our research is complete . . . ."

24. The FLSA claim had *always* been part of the *Muniz* litigation. Thus, Hortica was admitting, nearly three years after the suit was first filed, that it still had to "research" and could not yet positively state its position on coverage. In short, Hortica failed its affirmative duty to its insured to affirm or deny coverage of claims within a reasonable time.

25. On March 18, 2010, the *Muniz* plaintiffs filed a Motion for Reconsideration of this Court's order dismissing the plaintiffs' non-FLSA claims.

26. On March 19, 2010, Hortica tendered a check to Locke Lord Bissell & Liddell in partial payment of services rendered in Pittman Nursery's defense. On the same day, however, Hortica again stated that—as a result of this Court's March 15, 2010 ruling—it was once again questioning its duty to defend Pittman Nursery. As of September 2, 2010, Hortica had failed to make any subsequent payments and had otherwise wholly failed to pay Pittman Nursery's legal bills as they came due. To this day, nearly three years after the *Muniz* plaintiffs filed their original Complaint, Hortica has yet to render an unequivocal coverage determination.

27. On April 5, 2010, the Muniz Plaintiffs filed a Motion to Amend Pleadings, attaching their proposed Second Amended Complaint which purports to reassert the previously dismissed causes of action. The Court granted this Motion on May 12, 2010

28. On August 30, 2010, the Court granted Pittman Nursery's Second Motion for Partial Summary Judgment and ordered that Hortica had a duty to defend Pittman Nursery in the *Aydani* litigation.

29. In addition to direct damages from Hortica's acts and omissions described herein, Pittman Nursery and Mrs. Pittman King have suffered other damages, which may also be direct or, depending on the evidence developed in discovery may be characterized as indirect, consequential, or special damages, e.g., they have been prevented from obtaining credit necessary to grow and preserve their businesses so long as the litigation is pending and they are saddled with the cost of defense and ongoing risk posed by that litigation.

30. Facts pleaded anywhere in this filing—regardless of the section or subsection of the filing in which they are pleaded—are intended to be applied and incorporated throughout without prejudice to the right of pleading in the alternative.

**B. Claim for Declaratory Relief**

31. Pittman Nursery and Mrs. Pittman King seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Ark. Code Ann. §§ 16-111-101 et seq., that Hortica has a contractual obligation to: (1) defend and indemnify Pittman Nursery and Mrs. Pittman King in a number of lawsuits filed in Arkansas state and federal court; (2) pay Pittman Nursery for losses resulting from Dawood Aydani's vandalism and willful and malicious damage to or destruction of Pittman Nursery's property; and (3) pay Pittman Nursery for loss and damage to Pittman Nursery's personal property resulting from Dawood Aydani's dishonest acts.

***i. Hortica's duty to defend and indemnify in the lawsuits***

32. The Greenhouse Grower's Package featuring Commercial General Liability ("CGL") coverage, an Employment Practices Liability Endorsement, optional Employee Dishonesty coverage, and Business Property Insurance with Special Property Coverage became effective January 1, 2002. These policies were renewed each year through January 1, 2008. (Compl. Ex. 2-6). The Excess Policy became effective January 1, 2002 and was renewed

through January 1, 2006. Pitman Nursery's claims are covered under these policies, and as a result, Hortica has a contractual duty to defend and indemnify Pittman Nursery in the *Muniz* litigation and *Hunter* litigation.

33. Hortica's duty to defend and indemnify Pittman Nursery in the *Muniz* litigation arises as follows.

34. On March 15, 2010, this Court ordered Hortica to defend Pittman Nursery in the *Muniz* litigation under the CGL policy. Specifically, this Court held that "there is an allegation of an 'occurrence' that led to 'property damage' as required by the Commercial General Liability Coverage. Because there is a possibility that the injury or damage alleged in the *Muniz* litigation may fall within the scope of the Commercial General Liability Coverage, Hortica has a duty to defend [Pittman Nursery] PNC in the Muniz litigation." Doc. 137 at p. 9. This Court further held that "there is a possibility that the claims in the Hunter Litigation fall within the Employment Practices Coverage. Thus, Hortica has the duty to defend [Pittman Nursery] PNC in the Hunter Litigation." *Id*. at p. 13.

35. Shortly thereafter, this Court dismissed all of the *Muniz* Plaintiffs' causes of action with the exception of their FLSA claims. Despite this Court's dismissal of all but the FLSA claim, Hortica continues to have a duty to defend Pittman Nursery under the CGL and Excess policies.

36. The Supreme Court has held that the FLSA draws "a significant distinction" between willful FLSA violations, on the one hand, and ordinary or negligent FLSA violations, on the other. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132, (U.S. 1988); *see also Bretherick v. Crittenden County, Arkansas*, 2007 WL 890200, *2 (E.D. Ark. 2007) ("To show that an FLSA violation is willful, an employee must show that the employer was more than

negligent."); *Bennet v. Carl's Towing, L.L.C.*, 2005 WL 2101002, *8 (W.D. Mo. 2005) ("Neither a negligent violation, nor a mere failure to seek legal advice regarding a pay practice constitute a 'willful' [FLSA] violation.").

37. The *Muniz* plaintiffs have alleged only that Pittman Nursery acted negligently in violating the FLSA. In their Responses to Pittman Nursery's First Request for Admissions, the *Muniz* plaintiffs admit that they do not allege that Pittman Nursery "acted willfully or intentionally with respect to the cash payments that they allege Dawood Aydani demanded from Plaintiffs" or "any employees of Pittman Nursery." Indeed, this Court has held that "there is no evidence that [Pittman Nursery] PNC expected or anticipated Mr. Aydani's alleged acts of extortion." Doc. 137 at p. 6. Thus, all of the claims asserted against Pittman Nursery are based on unintentional conduct and, therefore, constitute an "occurrence" as to Pittman Nursery. Accordingly, Hortica continues to have a duty to defend and indemnify Pittman Nursery in the *Muniz* litigation, as this Court has already ruled.

38. Further, the *Muniz* plaintiffs allege that Aydani demanded $1000 cash payments in exchange for the right to work, thus, they suffered "loss of use of tangible property [cash money] that is not physically injured." Whereas other portions of the policy exclude money as tangible property, the CGL and Excess policies do not, and case law supports interpreting this ambiguity, if any, in favor of Pittman Nursery to support coverage. Indeed, this Court has already ruled that "because this money was in physical form, it could be viewed as tangible property." Doc. 137 at p. 9.

39. Additionally, the *Muniz* First Amended Complaint and the proposed *Muniz* Second Amended Complaint state that the "activities of the Defendants constituted the common law tort of conversion . . . ." This is an occurrence within coverage of the CGL and Excess

policies, and the alleged injury occurred during the policy period. In Arkansas, conversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession. Damages for conversion may be had for loss of use. Conversion can only result from conduct intended to affect "property," and money, so long as it is an identifiable sum, may be the "property" at issue. The CGL coverage and the Excess Policy provide coverage for property damage, including loss of use of tangible property that is not physically injured. Accordingly, Hortica owes Pittman Nursery the duty to defend and indemnify. The coverage for each is the $1 million limit for property damage or the $2 million per year aggregate under the CGL coverage and, the $5 million aggregate coverage stated under the Excess Policy. Because there were occurrences alleged in each of four individual years and the coverage is occurrence based (as opposed to claims made) these limits are renewed for each of the years 2004 through 2007 alleged, i.e., a property damage limit of $1 million means an effective limit of $4 million since occurrences are alleged in each of the four years in which a $1 million limit applies.

40. Similarly, the *Muniz* First Amended Complaint and the proposed *Muniz* Second Amended Complaint attempt to state a claim under RICO alleging injuries to the *Muniz* Plaintiff's "business and property … in that monies due and owing to Plaintiffs have been wrongfully taken and withheld." Under RICO, a plaintiff may recover damages if they were injured in "their business or property." This allegation in the *Muniz* complaint is one for property damage resulting from an occurrence as defined in the CGL and Excess policies. This alleged occurrence occurred during the policy period. Pittman Nursery's alleged involvement is only specifically asserted in the *Muniz* First Amended Complaint and the proposed *Muniz* Second Amended Complaint to be negligence. Therefore there is coverage under the CGL and Excess policies with limits as discussed above.

41. The *Muniz* First Amended Complaint and the proposed *Muniz* Second Amended Complaint also assert a claim for negligent supervision. The live complaint states that "[t]o the extent that Defendant Aydani's conduct toward Plaintiffs was outside the course and scope of his employment, the remaining Defendants are nevertheless responsible … under the doctrine of *respondeat superior*, because it resulted from their negligent supervision of him." This allegation is one for property damage (i.e. the loss of the use of cash money), taking place during the policy period, resulting from an occurrence as defined in the CGL coverage and Excess Policy. Therefore, this claim is covered by the CGL coverage and Excess Policy, and as a result, Hortica has a duty to defend and indemnify Pittman Nursery within the limits previously discussed.

42. The *Muniz* plaintiffs have alleged that they were forced by Aydani to pay him $1,000 kickbacks for the privilege to work. In effect, the allegation is that Aydani forced an amended or altered agreement on the *Muniz* plaintiffs, who, upon information and belief, had written contracts constituting promises for the payment of money in exchange for their work. Thus, Hortica has an additional duty to defend pursuant to the alteration coverage described in the Special Property Coverage section of the Greenhouse Grower's Business Package. This policy requires Hortica to pay for "loss resulting from . . . alteration of any . . . written promise of payment" and "any reasonable legal expenses" incurred to defend the suit. The policy is ambiguous or otherwise unclear as to what the limit, if any, would be on this obligation, other than that the legal expenses be "reasonable." Accordingly, because insurance contracts are construed against the insurer and in favor of the insured, Hortica is obligated to pay for the loss and all reasonable legal expenses incurred by Pittman Nursery to defend the *Muniz* suit.

43. Hortica's duty to defend and indemnify Pittman Nursery in the *Muniz* litigation results from coverage under the Employment Practices Liability Endorsement because the claims made against Pittman Nursery assert wrongful employment practices, discrimination, and/or harassment as defined by that endorsement, and the claims were made during the policy period. . The obligation to defend Pittman Nursery to the $100,000 limits of the Employment Practices Liability Endorsement arose upon payment of the $5,000 deductible, which Pittman Nursery has now paid.. Hortica's payment on this policy before Pittman Nursery paid the deductible was a voluntary payment and cannot be recovered

44. Hortica also has a duty to pay for any loss resulting from the *Muniz* litigation under the Employee Dishonesty coverage, which covers the direct loss of personal property, including money owned by others, resulting from dishonest acts committed by Pittman Nursery's employees, e.g., Aydani. This coverage provides $5,000 per occurrence, which means at least $5,000 for each *Muniz* plaintiff and may mean $5,000 for each act of extortion.

45. Nothing pleaded by the *Muniz* plaintiffs indicates that Pittman Nursery's role was anything but unintentional and accidental with respect to the occurrences alleged. Thus, Hortica cannot escape its obligations by claiming no occurrence because no accident.

46. Hortica also has a contractual duty to defend and indemnify Pittman Nursery in the *Hunter* litigation.

47. The CGL policy covers "property damage," which is defined to include "loss of use of tangible property that is not physically injured. Hunter alleges that he was not paid money owed to him. Money—the wages and commissions which Hunter alleges he has been denied—is tangible property. Further, from the standpoint of the insured, Pittman Nursery, the alleged "property damage" resulted from an "occurrence." Pittman Nursery did not intentionally fail to

pay Hunter wages or commissions or to give him 90 days notice, because Pittman Nursery was unaware of the alleged [and forged] agreement at the time that it terminated Hunter.

48. Indeed, there is a fact issue as to when the agreement was typed and whether the agreement was even signed before Aydani or Hunter were fired. If Aydani, who purportedly signed the agreement on Pittman Nursery's behalf, was fired at the time that he signed the alleged agreement, he could not commit Pittman Nursery to the contract. Further, if Hunter was already fired when he backdated the contract in collusion with Aydani, then Pittman Nursery cannot be held retroactively liable for failing to give him 90 days notice. There being no valid contract—because the document on which Hunter bases his claims is bogus, being backdated and entered into without authority—no exclusions for contracts apply.

49. Further, it is not clear that the causes of action in the *Hunter* litigation are restricted to breach of contract. Hunter's live pleading requests certain relief that is not available for breach of contract, e.g., "punitive damages," and uses terminology appropriate only to claims in tort, e.g., "wanton, reckless, and willful." Accordingly, coverage cannot be denied solely on the basis of exclusions for actions on contract.

50. Hortica's duty to defend and indemnify in the *Hunter* litigation also arises from the Employment Practices Liability Endorsement because the claims made against Pittman Nursery assert wrongful employment practices as defined by that endorsement, and Pittman Nursery's coverage claim was made during the policy period. This endorsement provides Pittman Nursery with $100,000 in coverage once Pittman Nursery pays the $5,000 deductible.

51. Hortica also has a duty to pay for any loss resulting from the *Hunter* litigation under the Employee Dishonesty coverage for each alleged act of dishonesty.

52. Additionally, Hortica has a duty to defend pursuant to the forgery or alteration coverage described in the Special Property Coverage section of the Greenhouse Grower's Business Package because Hunter sued Pittman Nursery for refusing to pay on an altered or forged written promise of payment of money. This policy requires Hortica to pay for "loss resulting from forgery" and "any reasonable legal expenses" incurred to defend the suit. The policy is ambiguous or otherwise unclear as to what the limit, if any, would be on this obligation, other than that the legal expenses be "reasonable." Accordingly, because insurance contracts are construed against the insurer and in favor of the insured, Hortica is obligated to pay for the loss and all reasonable legal expenses incurred by Pittman Nursery to defend the *Hunter* suit.

53. Currently, Hortica has no duty to defend and indemnify Mrs. Pittman King personally in the *Muniz* litigation or the *Hunter* litigation because she was not and has not been personally named as a defendant in those litigations. However, Mrs. Pittman King reserves her right to seek a declaration of coverage should she become a defendant in those proceedings.

54. On August 30, 2010, the Court ordered that Hortica had a duty to defend Pittman Nursery in the *Aydani* litigation. Hortica had a duty to defend and indemnify both Pittman Nursery and Mrs. Pittman King in the *Aydani* litigation based on the coverage in the Employment Practices Liability Endorsement because the claims made against Pittman Nursery and Mrs. Pittman King assert wrongful employment practices, discrimination, and/or harassment as defined by that endorsement, and these claims were made during the policy period.

55. Further, Aydani's suit arises out of his termination for his dishonest acts, e.g., theft and embezzlement, resulting in direct loss to Pittman Nursery of money and/or securities, and, thus, coverage arises under the Employee Dishonesty coverage.

56. The Commercial General Liability coverage and Excess Policy cover loss of use of tangible property (including money) and provide a duty to defend and indemnify on the *Aydani* litigation because Aydani alleged that he was deprived the use of money allegedly owed to him under an alleged agreement with "Pittman Nursery Company" and/or "D.M. Pittman dba Pittman Wholesale Nursery." Because the *Aydani* litigation alleged torts, and any contract it alleged was not with Pittman Nursery Corporation or Donna Sue Pittman King, any contractual liability exclusion does not apply. Pittman Nursery and Mrs. Pittman King personally incurred costs that should have been covered under the policy terms in defense of the *Aydani* litigation. Hortica was obligated to defend and indemnify Pittman Nursery and Mrs. Pittman King to the $100,000 limits of the Employment Practices Liability Endorsement, and/or the $2 million limit of the Commercial General Liability coverage, and/or the $5 million limit of the Excess Policy. Nevertheless, Hortica has refused to reimburse Pittman Nursery and Mrs. Pittman King for their legal costs incurred in bringing the *Aydani* litigation to settlement.

57. Pittman Nursery is entitled to have the policy interpreted in a reasonable manner that maximizes its insurance coverage. As a result of Hortica's acts, omissions, and assertions, the rights, status, and other legal relations of Pittman Nursery and Hortica vis-à-vis the policies are uncertain and insecure, a real controversy exists with respect to coverage (although as of this writing not yet indemnity with respect to the *Muniz* and *Hunter* litigations), and the entry of declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

***ii. Hortica's duty to pay for loss resulting from vandalism and willful damage***

58. Under the Business Property Insurance, Hortica is obligated to pay for loss or damage to covered property in any one occurrence due to the causes of loss shown in the Policy

Declarations Page or Schedule of Coverage. The causes of loss against which Hortica must insure include vandalism or willful and malicious damage to or destruction of covered property.

59. When Aydani left Pittman Nursery's property in early 2008, he became disgruntled and committed several acts of willful and malicious damage to Pittman Nursery property in the process of abandoning the residence he occupied on Pittman Nursery's premises. Specifically, Aydani sabotaged the Pittman Nursery farm watering system and maliciously vandalized and damaged several items of personal property from the nursery farm house, including: major appliances, custom cabinetry, Pittman Nursery's sprinkler system, trees, shrubs, a below ground swimming pool, the pool pumping and filter system, and the pool house, including many of the fixtures and appliances contained within.

60. The property Aydani vandalized and maliciously damaged was "covered property" as that term is defined by the Business Property Insurance policy.

61. Pittman Nursery satisfied all of its obligations under the Business Insurance Policy that were conditions precedent to its receipt of coverage.

62. Hortica, therefore, has a contractual duty to pay Pittman Nursery for losses Pittman Nursery suffered as a result of Aydani's vandalism and willful and malicious damage to or destruction of Pittman Nursery's property.

***iii. Hortica's duty to pay for loss resulting from Aydani's dishonest acts***

63. Hortica also has a duty to pay for all losses resulting from Aydani's theft or embezzlement of Pittman Nursery's money under the Employee Dishonesty coverage.

64. The Employee Dishonesty Coverage states: WE [Hortica] will pay for <u>direct loss</u> or damage to Business PERSONAL PROPERTY, including MONEY and SECURITIES, resulting from dishonest acts committed by any of YOUR EMPLOYEES acting alone or in

collusion with other persons (except YOU or YOUR partner) with manifest intent to (1) Cause YOU to sustain loss or damage; and also (2) Obtain financial benefit…..

65. As evidenced by deposition testimony of Pittman Nursery's bookkeeper, Lawanda Jones, Aydani routinely skimmed money from Pittman Nursery for his personal use during each year that Pittman Nursery had Employee Dishonesty Coverage (i.e. during each Policy Period).

66. Under Aydani's instruction, Ms. Jones maintained a secret ledger of personal expenses that were wrongfully paid to Aydani and others. Neither Pittman Nursery nor Mrs. Pittman King had knowledge of this secret ledger, nor did they have knowledge of or participate in Aydani's dishonest acts of embezzlement and theft.

67. Aydani acted with manifest intent to obtain financial benefit and to cause Pittman Nursery to sustain loss or damage.

68. Aydani's dishonest acts of embezzlement and theft caused direct loss and damage to Pittman Nursery's personal property.

69. Pittman Nursery satisfied all of its obligations under the Employee Dishonesty policy that were conditions precedent to its receipt of coverage.

70. Hortica, therefore, has a contractual duty to pay Pittman Nursery for losses Pittman Nursery suffered as a result of Aydani's dishonest acts of embezzlement and theft.

**C. Claim for Breach of Contract**

71. The Greenhouse Grower Business Package and the Excess Policy constitute valid and enforceable contracts between the parties, Hortica and Pittman Nursery. Pursuant to these contracts, Hortica is obligated to defend and indemnify Pittman Nursery in the *Muniz* litigation and the *Hunter* litigation (see above).

72. As a result of these policies, Hortica also had a duty to defend and indemnify both Pittman Nursery and Mrs. Pittman King in the *Aydani* litigation (see above).

73. Hortica has breached or declared anticipatory breach of its obligations.

74. As a proximate result of Hortica's breach, Pittman Nursery and Mrs. Pittman King have sustained substantial damages, including, but not limited to, loss of premiums without receiving the benefit of the bargain promised under the policies, the attorneys' fees, litigation support expenses, defense costs, court costs, expert costs, liability and/or settlement costs, and other costs and interest on all amounts already paid and to be paid in the future to defend, try, settle or otherwise resolve the litigations or any judgments arising from the pending litigations. Pittman Nursery was further damaged in that it was forced to settle Aydani's claims on disadvantageous terms. Pittman Nursery is entitled to recover the value of all rights surrendered and all consequential damages flowing from its settlement of Aydani's claims.

**D. Claim for Bad Faith**

75. This Court has supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367.

76. Pittman Nursery and Mrs. Pittman King assert claims against Hortica under the common law and the Arkansas Insurance Code, including bad faith, unfair and deceptive acts in the business of insurance, wrongfully refusing to pay valid claims, failure to promptly handle Pittman Nursery and Mrs. Pittman King's written and oral requests and complaints regarding coverage, and unfair claims settlement practices, as more fully set forth herein.

77. Hortica has engaged in affirmative action that constitutes bad faith.

78. Hortica has misrepresented pertinent facts, its duties under Arkansas legal precedents, and insurance policy provisions relating to the coverage at issue, such as (directly or through its counsel) denying the existence of the Excess Policy in one of the underlying

proceedings, denying its duty to defend or to pay for counsel, promising to pay for a defense and then reneging, delaying, or only partially performing on that promise; misrepresenting definitions and/or exclusions in the policies, e.g., claiming exclusions in one policy apply to all policies when that is clearly not the law in Arkansas (or most any jurisdiction); and affirmatively denying coverage under insurance policies where the policies provide coverage. In this action and in letters to Pittman Nursery, Hortica has willfully and in bad faith interpreted policy provisions and the factual circumstances so as to resolve ambiguities and uncertainties against Pittman Nursery and to Hortica's own interests; misrepresented to Pittman Nursery the meaning of insurance policy provisions, insurance coverages, and exclusions; failed to inform Pittman Nursery of all possible bases for coverage; and failed to provide reasonable explanation of the basis for denial of coverage.

79. Additionally, Hortica has undertaken its duty to defend Pittman Nursery and begun that defense in the *Aydani* and *Muniz* litigations but now denies or questions coverage. Moreover, although the same counsel that Hortica hired to represent Pittman Nursery began providing a defense in the *Hunter* litigation by writing a cease-and-desist letter, Hortica has since refused a defense in the *Hunter* litigation despite the presence of coverage.

80. Hortica has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policies at issue.

81. Hortica refused to pay Pittman Nursery and Mrs. Pittman King's claims without conducting a reasonable investigation based upon all available information.

82. After agreeing to provide a defense under a reservation of rights to deny coverage, Hortica tendered a small check with language on its face designed to trap Pittman Nursery into an inadvertent accord and satisfaction; Hortica then refused to tender any payment at all for

defense costs for an oppressively long period of time and again questioned coverage immediately after this Court ruled that there was coverage. Hortica has since tendered only partial payment after this Court ordered Hortica to provide a defense. These actions were calculated to drive Pittman Nursery toward insolvency, test its counsel's willingness to proceed without certain compensation, and break the spirits of its owner, Donna Pittman King. These acts demonstrate what can only be characterized as hatred, ill will, or a spirit of revenge.

83. On information and belief, Hortica's strategy was to purport to provide a defense under a reservation of rights to deny coverage, but to withhold payment for defense costs until after this Court made a final coverage determination. The strategy was designed to injure Pittman Nursery and Mrs. Pittman King and to hamstring them from taking appropriate action to protect their interests; e.g., to prevent Pittman Nursery from settling the *Muniz* and *Hunter* litigations without Hortica's approval (because Hortica could claim it had agreed to pay for a defense); to pressure their unpaid counsel to withdraw from the field; and to put financial pressure on Pittman Nursery and Mrs. Pittman King by driving them further into debt for legal costs and leaving them without access to credit due to pending legal problems.

84. Hortica has failed to affirm or deny coverage of claims within a reasonable time, and continues to question coverage, despite the fact that this Court ordered Hortica to provide Pittman Nursery a defense.

85. Similarly, Hortica has delayed the investigation or payment of claims by requiring Pittman Nursery and Mrs. Pittman King to submit formal proof of loss forms which are not required under several of the policies and/or which contain substantially the same information that was already submitted in the written demands for coverage.

86. Hortica has not attempted in good faith to effectuate prompt, fair, and equitable settlements of claims.

87. Hortica issued a check in partial settlement of a loss or claim under specific coverage which contained language purporting to release Hortica from total liability.

88. Hortica has failed to advise and to timely advise Pittman Nursery and Mrs. Pittman King about the extent of policy coverage.

89. In the *Muniz* litigation, Hortica has taken a hard line settlement approach that places its own interests over those of its insured.

90. Hortica has disregarded the financial interests of Pittman Nursery and Mrs. Pittman King and has demonstrated preference to gamble on escaping all liability by a favorable verdict in the *Muniz* litigation, rather than accepting a settlement within policy limits.

91. Additionally, Hortica has failed to promptly settle claims under one portion of the insurance policy coverage in order to influence settlements under another portion of the insurance coverage.

92. Furthermore, despite the prescription under Arkansas law that the insured is the client in the underlying action, Hortica has conducted itself as the "client" in the underlying litigations. Pursuant to that frame of mind, Hortica has steered the direction of litigation in the underlying action towards its bests interest—no coverage. The Hortica hired defense in the *Muniz* litigation, although purporting to represent Pittman Nursery, has repeatedly argued for the insurance company's position, that Hortica owes no coverage to Pittman Nursery, which is adverse to Pittman Nursery's best interests.

93. Additionally, the Hortica-hired defense failed to vigorously defend Pittman Nursery in the *Muniz* litigation; e.g., failing to assert standard defenses and basic cross-claims or to make routine motions to dismiss. *See* detailed allegations above in the "Defenses" section.

94. Ultimately, Hortica has forced Pittman Nursery into lengthy and expensive litigation to obtain the insurance coverage to which Pittman Nursery is entitled under the insurance policies—and for which it has paid so dearly and faithfully over many years. Moreover, days after this Court ordered that Hortica has a duty to defend Pittman Nursery, Hortica began to again and repeatedly assert to Pittman Nursery that it had no such duty and/or that it still had to complete its "research" into whether it owed its insured a duty to defend.

95. This conduct has left Pittman Nursery in an uncertain and precarious position that has interfered with Pittman Nursery's efforts at defending itself in the various proceedings and, at various times, has jeopardized Pittman Nursery's very existence.

96. Hortica's affirmative misconduct in these instances and others has been an oppressive, dishonest, and malicious attempt to avoid a just obligation to Pittman Nursery, and Pittman Nursery should recover damages resulting from this misconduct.

97. Hortica's bad faith and misconduct toward Pittman Nursery was malicious, wanton, or willful so as to constitute oppression, fraud or malice, and warrants deterrence through an award of punitive and exemplary damages in an amount sufficient to both punish Hortica and set an example to deter Hortica and others from like conduct.

98. Hortica's bad faith and misconduct has caused Mrs. Pittman King severe emotional distress, which is compensable under Arkansas law and warrants deterrence through an award of punitive and exemplary damages in an amount sufficient to both punish Hortica and set an example to deter Hortica and others from like conduct.

**E. Claim for Breach of Fiduciary Duty**

99. Hortica voluntarily began a defense of Pittman Nursery in the *Aydani*, *Muniz*, and *Hunter* litigations. Hortica asserted an absolute right to control defense of the actions, appointed counsel of its choosing and began complying with the terms of the policy. The policies, the insurer/insured relationship, and/or these actions by Hortica gave rise to and imposed on Hortica the fiduciary duties of good faith and fair dealing, to refrain from self-dealing, and to act in Pittman Nursery's best interest.

100. The insurance policies that Hortica sold to Pittman Nursery, the services and expertise supplied by Hortica thereto, and Pittman Nursery's placement of its trust in Hortica, created a fiduciary relationship between Hortica and Pittman Nursery. The insurance policies made Hortica a fiduciary by giving it control over Pittman Nursery's defense. These policies gave Hortica the right to investigate, conduct any negotiation, or enter into the settlement of any claim that Hortica, in its sole discretion, deemed necessary. They further provided that Pittman Nursery could take control of an outstanding claim previously reported to Hortica only if Hortica agreed that Pittman Nursery could do so or if a court ordered Pittman Nursery to do so. In short, they required Pittman Nursery to surrender control of litigation to Hortica and trust that Hortica would act in Pittman Nursery's best interest.

101. In this fiduciary relationship, Hortica was obligated to act in Pittman Nursery's best interest. It owed to Pittman Nursery duties of fair dealing, good faith, honesty, and loyalty. It was bound to protect and defend Pittman Nursery, its insured, in good faith, and to cooperate in good faith with Pittman Nursery in investigating its insurance coverage claims. Hortica had a duty to defend Pittman Nursery, not to leave Pittman Nursery undefended and then marshal its resources against Pittman Nursery.

102. Pittman Nursery had reason to believe it could rely on, and in fact did rely to its detriment, on Hortica fulfilling its fiduciary duties and obligations, including those duties set forth herein.

103. Despite Hortica's fiduciary obligations to Pittman Nursery, Hortica abandoned Pittman Nursery in the *Aydani* and *Hunter* litigations. Pittman Nursery was only able to settle the *Aydani* litigation through the efforts of counsel for which Hortica has refused to pay, and Pittman Nursery has been forced to continue its defense of the *Hunter* litigation through that same counsel, whom Hortica has again refused to pay.

104. Despite Hortica's fiduciary obligations to Pittman Nursery, Hortica directed the defense of the *Muniz* litigation, and/or hired lawyers who conducted that defense, in a manner contrary to Pittman Nursery's best interests (all as described above). In fact, those lawyers have taken actions apparently calculated to place Hortica's interests over those of Pittman Nursery. Further, when Pittman Nursery pointed out the failings of the Hortica-hired lawyers and asked Hortica to pay for lawyers chosen by Pittman Nursery to act in its best interests, Hortica abandoned Pittman Nursery, stating that Hortica would not fund that defense because it did not trust Pittman Nursery's chosen lawyer to work in its—Hortica's (!)—best interests.

105. After Pittman Nursery's new counsel pointed out case law affirmatively showing Hortica its duties, Hortica changed tack, stating that it would pay reasonable attorneys' fees to defend the *Muniz* litigation, but then attempting—in direct contravention of Pittman Nursery's best interests—to effect a complete accord and satisfaction by sending a check for a nominal sum marked, "Balance of Coverage Under Employment Practices Coverage."

106. After the Hortica-hired counsel were replaced, Hortica attempted to intervene in the *Muniz* litigation in order to challenge Pittman Nursery's right to counsel and further drive up Pittman Nursery's costs.

107. After agreeing to provide a defense under a reservation of rights to deny coverage, Hortica refused to tender payment for defense costs for an oppressively long period of time, and then tendered only partial payment after this Court ordered Hortica to provide a defense. These actions demonstrate what can only be characterized as hatred, ill will, or a spirit of revenge.

108. On information and belief, Hortica's strategy was to purport to provide a defense under a reservation of rights to deny coverage, but to withhold payment for defense costs until after this Court made a final coverage determination.

109. Hortica has not cooperated in good faith in investigating the insurance coverage claims in the underlying litigations, and Plaintiff Hortica in this case now denies that coverage existed and pursues declaratory judgment to avoid the duties it previously accepted. Thus, Hortica has willfully and deliberately breached its fiduciary duties and obligations owed to Pittman Nursery.

110. In Arkansas, an insurer has a duty to settle within policy limits, and the failure to do so may give rise to cause of action for breach of fiduciary duty or negligence. Since at least November 2008, the *Muniz* plaintiffs have offered to settle on terms well within policy limits and have made their offer known to Hortica and the Hortica-hired lawyers through which Hortica controlled defense of the *Muniz* litigation. Hortica has repeatedly rejected the offer out of hand, refusing even to negotiate in good faith and without any consideration to the interests of its insured, Pittman Nursery. Such failure to settle constitutes both negligence and breach of Hortica's fiduciary duty to Pittman Nursery.

111. Likewise, the *Hunter* plaintiff offered to settle on terms well within policy limits, and his offer is known to Hortica and the Hortica-hired lawyers. Hortica refused to settle the *Hunter* litigation, too, and again without any consideration to the interests of its insured, Pittman Nursery. Such failure to settle constitutes both negligence and breach of Hortica's fiduciary duty to Pittman Nursery.

112. As a result of Hortica's fiduciary breaches, Pittman Nursery has suffered and continues to suffer direct and consequential harm and expense, including, without limitation, the costs of defending the various litigations and the costs of this action, for which Hortica is liable to Pittman Nursery. Future damages may include liabilities that Pittman Nursery would otherwise have avoided (or for which it would have been indemnified by the other defendants) if Hortica had provided Pittman Nursery a proper defense in the underlying actions.

113. Hortica's affirmative misconduct in these instances and others has been oppressive, dishonest, malicious, wanton, or willful and warrants punishment and deterrence through an award of punitive and exemplary damages to Pittman Nursery.

114. Hortica's misconduct has caused Mrs. Pittman King severe emotional distress, which is compensable under Arkansas law. In so far as her injuries resulted from Hortica's gross negligence, malice or fraud, an awarding her punitive and exemplary damages to punish Hortica and deter similar courses of conduct would also be appropriate..

**F. Claim for Negligence and Negligent Claims Handling**

115. In addition to its fiduciary duties, Hortica undertook—through the insurance policies and the services and expertise supplied by Hortica thereto—a duty to act without negligence in defending Pittman Nursery.

116. Hortica breached its duty to act without negligence by failing to act with reasonable care or ordinary prudence in defending Pittman Nursery. For example (but without limitation), Hortica failed to act with reasonable care or ordinary prudence by: (1) failing to conduct a reasonable investigation of the underlying factual allegations before denying coverage; (2) failing to affirm or deny coverage of claims within a reasonable time, and continuing to question coverage, despite the fact that this Court ordered Hortica to provide Pittman Nursery a defense; (3) failing to tender defense costs for an unreasonably and oppressively long period of time after agreeing to provide a defense under a reservation of rights to deny coverage; (4) failing to settle the *Aydani*, *Hunter*, and *Muniz* litigations within policy limits; (5) abandoning Pittman Nursery in the *Aydani* and *Hunter* litigations; (6) hiring, paying, and controlling counsel in the *Muniz* litigation who were conflicted in their loyalty to their client (Pittman Nursery), who failed to state defenses, assert cross-claims, and make motions to dismiss that would be standard practice on the pleadings in the *Muniz* litigation, who asserted positions that were adverse to Pittman Nursery's interests, and who frittered away defense funds on clearly irrelevant research; (7) failing to take corrective action when it was informed of the deficiencies of its chosen counsel; (8) failing to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; (9) failing to promptly settle claims under one portion of the insurance policy coverage in order to influence settlements under another portion of the insurance coverage; and (10) conducting itself as the "client" in the underlying litigations.

117. Pittman Nursery and Mrs. Pittman King sustained damages. Hortica's negligence was the proximate cause of these damages. As a result of Hortica's negligent choice and control of counsel, for example, Pittman Nursery was forced to hire outside counsel (whom Hortica

refused to pay) to settle the *Aydani* litigation, and has been forced to continue its defense of the *Hunter* litigation through that same counsel. Moreover, Hortica's negligence has caused Pittman Nursery to lose opportunities to settle the *Muniz* litigation within policy limits or to have many causes of action stricken early in the *Muniz* litigation.

118. Pittman Nursery's injury resulted from Hortica's gross negligence, malice or fraud, and warrants punishment and deterrence through an award of punitive and exemplary damages to Pittman Nursery.

119. Hortica's negligence has caused Mrs. Pittman King severe emotional distress, which is compensable under Arkansas law. In so far as her injuries resulted from Hortica's gross negligence, malice or fraud, an awarding her punitive and exemplary damages to punish Hortica and deter similar courses of conduct would also be appropriate.

**G. Promissory Estoppel**

120. When the suits were initiated, Hortica confirmed to Pittman Nursery that it had agreed to defend both the *Aydani* and *Muniz* lawsuits.

121. After Pittman Nursery replaced the Hortica-hired attorneys with the undersigned lawyers to defend it in the *Muniz* litigation, Hortica represented to Pittman Nursery that Hortica intended to pay Pittman Nursery's ongoing reasonable attorneys fees in the *Muniz* litigation, under a reservation of rights.

122. In reliance on these representations and despite settlement offers from the *Muniz* plaintiffs that Pittman Nursery would have entered into but for Hortica's assurances that it would fund a defense, Pittman Nursery continued its defense of the *Muniz* litigation. Despite its assurances, Hortica has not paid Pittman Nursery's reasonable attorneys' fees. Pittman

Nursery's reliance on Hortica's representation injured Pittman Nursery by causing it to incur additional expenses in defending the *Muniz* litigation.

123. In a motion to intervene filed in the *Muniz* litigation on August 8, 2009, Hortica represented that it intended to continue providing a defense to Pittman Nursery under the CGL coverage with a full reservation of rights.

124. In reliance on these representations, Pittman Nursery continued its defense of the *Muniz* litigation, but Hortica has not paid for reasonable defense costs. Pittman Nursery's reliance on Hortica's representation injured Pittman Nursery by causing it to incur additional expenses in defending the *Muniz* litigation.

125. Hortica knew, or reasonably should have known, that Pittman Nursery would rely on Hortica's representation that it would fund Pittman Nursery's defense in the *Muniz* litigation.

126. Only if Hortica's promise to fund Pittman Nursery's defense in the *Muniz* litigation is enforced can injustice be avoided.

**H. Contempt**

127. The Court's Order of March 2, 2010 in this case stated that "Hortica has a duty to defend PNC [Pittman Nursery] in the Muniz and Hunter Litigations."

128. As described above, after the Court's Order of March 2, 2010 was in effect, Hortica denied its duty to defend Pittman Nursery in the *Muniz* Litigation and has otherwise failed in its duty to defend, thus, putting itself in contempt of this Court.

129. Pittman Nursery and Mrs. Pittman King have been injured by Hortica's contempt, specifically its failure to defend Pittman Nursery. Without waiver of any other rights, Pittman Nursery and Mrs. Pittman King are entitled to compensatory fines and to fees and expenses of litigation.

130. Traditional options for court in imposing civil contempt sanctions include coercive incarceration, coercive fines payable to court, compensatory fines payable to victims, fees and expenses of litigation, or modification of permanent injunction,

**I. Claim for Attorneys' Fees and Costs**

131. Under Arkansas law, a party is entitled to reasonable attorneys' fees for lawsuits alleging breach of contract and for suits related to insurance coverage. *See* Ark. Code Ann. § 23-79-209. Attorneys' fees and costs may be also recovered on declaratory judgment actions. 28 U.S.C. §§ 2201 and 2202; Ark. Code Ann. §§ 16-111-101 *et seq.*

132. Hortica has breached the insurance contract by failing to fulfill its contractual obligations to defend and indemnify Pittman Nursery and Mrs. Pittman King. And Pittman Nursery and Mrs. Pittman King have been forced to enlist the undersigned counsel to seek a declaration of their rights and Hortica's duties under the policies and to prosecute counterclaims for breach of contract. Thus, Hortica should be held liable for the reasonable value of attorney's fees and costs spent in seeking this declaratory relief and in prosecuting the claims for breach of contract.

133. Hortica's contempt entitles Pittman Nursery to fees and expenses of litigation.

134. Because Hortica has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, Pittman Nursery and Mrs. Pittman King are entitled to attorneys' fees under the principles described in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

## IV. DEMAND FOR JURY TRIAL

135. Pittman Nursery asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## V. PRAYER

WHEREFORE, Pittman Nursery respectfully requests that the Court:

a) Declare the rights and obligations of the parties under the various above-referenced insurance policies;

b) Declare that, under the policies, Hortica has a continuing obligation to defend and indemnify Pittman Nursery in the lawsuits filed by the *Muniz* plaintiffs and by John-Michael Hunter;

c) Declare that, under the policies, Hortica had an obligation to defend and indemnify both Pittman Nursery and Mrs. Pittman King in the lawsuit filed by Aydani;

d) Find that Hortica has acted in bad faith under Arkansas common law;

e) Find that Hortica acting in bad faith, engaged in unfair and deceptive acts in the business of insurance; failed to promptly handle Pittman Nursery and Mrs. Pittman King's written and oral requests and complaints regarding coverage, and engaged in unfair claims settlement practice in violation of the Arkansas Insurance Code;

f) Find that Hortica breached its fiduciary duty;

g) Award such damages as are appropriate for this bad faith conduct;

h) Award such damages as are appropriate for violations under the Arkansas Insurance Code;

i) Award compensatory damages for the breach of contract, including but not limited to the costs spent by Mrs. Pittman King and Pittman Nursery in defending the litigations;

j) Award reasonable attorneys' fees, expenses, and costs;

k) Award Pittman Nursery and Mrs. Pittman King all of their damages, whether direct or indirect, actual or special, expected or consequential;

l) Award Pittman Nursery and Mrs. Pittman King exemplary or punitive damages;

m) Award Pittman Nursery and Mrs. Pittman King pre- and post-judgment interest;

n) Find that Hortica negligently failed to defend Pittman Nursery and/or to settle the *Hunter*, *Aydani*, and *Muniz* litigations within the limits of Pittman Nursery's policy;

o) Award damages as are appropriate for Hortica's negligence;

p) Declare that Hortica is estopped from refusing to provide a defense to Pittman Nursery under the CGL coverage;

q) Hold Hortica in contempt and award compensatory fines, fees and costs of litigation to Pittman Nursery and Mrs. Pittman King;

r) Deny Hortica any fees or other monetary recovery it may seek; and

s) Grant such additional and further relief to Mrs. Pittman King and Pittman Nursery as the Court may deem just and proper.

Dated: September 3, 2010

Respectfully submitted,

/s/ Stephen D. Wilson

Stephen D. Wilson
Texas Bar No. 24003187
Sara N. Copeland
Texas Bar No. 24065078
Seth M. Roberts
Texas Bar No. 24051255
LOCKE LORD BISSELL & LIDDELL, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000 - Telephone
(214) 740-8800 – Facsimile
swilson@lockelord.com

William B. Harrell
Texas Bar No. 09042250
803 Pine Street
Texarkana, Texas 75501
(903) 793-1041 – Telephone
(903) 793-8449 – Facsimile

**ATTORNEYS FOR DEFENDANTS PITTMAN NURSERY CORPORATION AND DONNA SUE PITTMAN KING**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically filed the forgoing Second Amended Answer and Counterclaim with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Kristine G. Baker
kbaker@qgtb.com

Brad Dowler
bdowler@qgtb.com

Walter L. Boyaki
wboyaki@aol.com

Winford L. Dunn, Jr.
wldunn@dnmlawfirm.com

William B. Harrell
wbharrell@windstream.net

Mike Milligan
ElPasoMike13@aol.com

David P. Price
Dplaw4781@sbcglobal.net

Dated: September 3, 2010

/s/ Stephen D. Wilson
Stephen D. Wilson, Attorney for Defendants
Pittman Nursery Corporation and
Donna Sue Pittman King