```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    EL DORADO DIVISION
```

**HORTICA-FLORISTS' MUTUAL
INSURANCE CO.,**
                                                        **PLAINTIFF**

         v.           Case No. 07 - 1119

**PITTMAN NURSERY CORPORATION,
DONNA SUE PITTMAN KING,
and
JOHN-MICHAEL HUNTER,**                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Hortica-Florists' Mutual Insurance Company's ("Hortica") Motion for Partial Summary Judgment (Doc. 168), Memorandum Brief in Support (Doc. 169), and Statement of Facts (Doc. 170). Also before the Court are Defendants Pittman Nursery Corporation ("PNC") and Donna Sue Pittman King's Response in Opposition (Doc. 175) and Statement of Facts (Doc. 176).

Hortica asserts in its Motion that there is no genuine issue of material fact regarding its obligation to pay PNC for losses resulting from the acts of a former PNC employee, Mr. Dawood Aydani. First, Hortica maintains that Mr. Aydani's alleged vandalism and destruction of PNC property occurred after the expiration of the insurance coverage provided by Hortica to PNC. Hortica asks that summary judgment issue on the portion of PNC's counterclaim (found in Doc. 149, ¶¶ 58-62) stemming from losses caused by Mr. Aydani's alleged vandalism in 2008. Second, Hortica asserts that coverage should be denied for other losses PNC claims

were due to Mr. Aydani's alleged theft or embezzlement, since PNC did not satisfy the policy's pre-conditions and notice requirements. In the alternative, Hortica asks that any recovery for losses due to Mr. Aydani's alleged theft or embezzlement be limited to $5,000.

For the reasons discussed herein, Plaintiff's Motion (Doc. 168) is **GRANTED in PART and DENIED in PART.**

## I.    Background

In 2002, Hortica issued a Greenhouse Grower Business Package Policy to PNC under Policy Number BP-09496. The initial Policy period was from January 1, 2002 to January 1, 2003. Doc. 168-2. PNC renewed the Policy each year through the coverage year ending January 1, 2008. Docs. 168-3, 168-4, 168-5, 168-6, and 168-7. The Policy was canceled due to non-renewal by Hortica effective 12:01 a.m. on January 1, 2008, and PNC was notified of the cancellation. Doc. 168-8.

### A.    Damage to Real or Personal Property

PNC's Second Amended Counterclaim against Hortica states that "[w]hen Aydani left [PNC]'s property in early 2008, he became disgruntled and committed several acts of willful and malicious damage to Pittman Nursery property in the process of abandoning the residence he occupied on Pittman Nursery's premises." Doc. 149, ¶ 59. Because of the losses PNC suffered due to Mr. Aydani's alleged vandalism, PNC demands that Hortica, its insurer, reimburse PNC for

these losses, pursuant to the insurance Policy covering damage to real property (Doc. 168-1, p. 21) or to business personal property (168-1, p. 25). *See* Counterclaim at Doc. 149, ¶¶ 58-62.

### B. Damage Caused by Employee Dishonesty

PNC also alleges in its Second Amended Answer and Counterclaim that Hortica has a duty to pay for loss resulting from Mr. Aydani's dishonest acts of theft or embezzlement which occurred, according to PNC, at various times from 2003-2007. *See* Doc. 175, p. 3. Hortica asserts in its Motion for Partial Summary Judgment that it does not have a duty to pay claims stemming from theft or embezzlement because PNC failed to adhere to proper notification of claim procedures. The Policy provides that no legal action may arise unless "[t]here has been full compliance with all the terms and conditions[1] . . . and [t]he action is brought within one year after the date on which the direct physical loss occurred." Doc. 168-1, p. 70. But the Policy also provides that Hortica will pay for loss or damage "discovered no later than one year from the end of the Policy Period." Doc. 175-2, p. 25.

On July 23, 2007, Hortica's representative Nancy Zollo acknowledged PNC's claim regarding Mr. Aydani's alleged theft and

---

[1] The "terms and conditions" under the Policy include notifying the police if laws were broken, giving Hortica prompt notice of the loss along with a description of the property involved, sending Hortica a signed statement of proof of loss, and cooperating with Hortica in investigating or settling the claim, among other conditions. Doc. 169, p. 4.

3

asked PNC to supply Hortica with documentation supporting the claim. Doc. 168-9. Ms. Zollo stated she would "hold the claim file open" as PNC's investigation continued. Doc. 175-25, p. 2. On July 26, 2007 and August 13, 2007, Hortica received information from PNC as to Mr. Aydani's theft. Docs. 175-25 and 175-2. On January 11, 2008, PNC provided hundreds of pages of documentation to Hortica of employee theft, including checks, bills, and police reports (Doc. 168-16, Docs. 175-3 through 175-24). On January 17, 2009, Ms. Pittman King informed Hortica that she would not pursue a claim for employee theft "at this time" because she did not want to upset a recent settlement agreement and because she desired that Hortica focus its efforts on resolving the *Muniz* litigation, brought by current and former migrant worker employees of PNC. Doc. 168-16. Ultimately, on February 14, 2008, Ms. Zollo acknowledged that, per Ms. Pittman King's instruction, the theft claim would be deemed "inactive pending the resolution of several related issues." Doc. 168-17.

**II. Legal Standard**

In determining whether summary judgment is appropriate, the moving party bears the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Nat'l. Bank of Commerce of El*

*Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir. 1998) *(*citing *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)*.*

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)); *see also Brinkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010)("the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy").

Under Arkansas law, when the meaning of an insurance policy is at issue, "[a] common sense approach should be used, and generally the words employed in the policy are to be construed in their plain, ordinary, and popular sense." *Green v. Farmers Ins. Co., Inc.*, 57 F.Supp.2d 729, 732 (W.D. Ark. 1999). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was

5

not paid." *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 210 (Ark. 1997). However, "[a]lthough ambiguous language . . . should be construed in favor of the insured, such ambiguity exists only when a provision is susceptible to more than one reasonable interpretation." *Id.* (quoting *State Farm Fire & Cas. Co. v. Midgett*, 319 Ark. 435, 438, (Ark. 1995).

**III.  Discussion**

    **A.  Claims Arising from Aydani's Alleged Vandalism**

Hortica moves for summary judgment of PNC's counterclaim for damages arising from Mr. Aydani's alleged vandalism and destruction of property. Hortica has pointed out that the alleged vandalism occurred after the Policy was cancelled effective 12:01 a.m., January 1, 2008. Proper notice of cancellation was issued to PNC, and the plain language of the notice is unambiguous. Doc. 168-8. By PNC's own admission, the loss it suffered due to alleged vandalism by Mr. Aydani, occurred "in early 2008," after he was fired by PNC and asked to leave PNC property. Doc. 149, ¶ 59.

This loss therefore occurred after the Policy was cancelled. There is no coverage for this loss, and there is no genuine issue of material fact as to the timing of the loss and the expiration of coverage under the Policy. Consequently, this portion of PNC's counterclaim against Hortica (Doc. 149, ¶¶ 58-62) is dismissed.

    **B.  Claims Arising from Aydani's Alleged Theft/Embezzlement**

Hortica also moves for summary judgment of PNC's counterclaim

for damages arising from Mr. Aydani's theft or embezzlement from PNC. After consideration of the parties' briefing on this issue, the Court finds that there is a genuine issue of material fact as to whether PNC complied or substantially complied with the notice requirements of the Policy. Hortica admits that PNC provided it with some form of notice of the claim in 2007 and further documented the claim sometime thereafter. Doc. 169, pp. 5-7. In addition, Hortica acknowledges that PNC's claim for theft was investigated and then placed on "inactive status." *Id.* at p. 6. Considering these facts, summary judgment as to PNC's failure to give adequate notice to Hortica of its claims for employee theft or embezzlement is denied.

As to Hortica's pleading in the alternative that it be granted summary judgment on the dollar limit of recovery for loss caused by Mr. Aydani's theft or embezzlement, this is also denied. Though Hortica aserts that coverage is limited to $5,000 for all loss caused by Mr. Aydani's dishonest acts, the Policy provides up to $5,000 of coverage for each "occurrence." Doc. 168-1, p. 13. There is a material question of fact as to whether an "occurrence" means each theft brought about by a separate and distinct act, or several acts in the aggregate committed by a single individual. The Policy is ambiguous as to what constitutes an "occurrence." The Policy states: "All loss or damage: (1) Caused by one or more persons; or (2) Involving a single act or series of related acts; is considered

one occurrence." Doc. 175-2, p. 24. In attempting to interpret this language, it is not clear to the Court whether an "occurrence" is defined as all acts committed by a single individual, a number of "related acts" committed by an individual, or a single act committed by an individual. In the case at bar, PNC alleges that Mr. Aydani committed multiple acts of theft or embezzlement spanning multiple years, using multiple sources of funding. Considering the complex nature of the counterclaim for recovery for Mr. Aydani's acts of theft and the ambiguity of the contractual language on this subject, summary judgment is inappropriate.

**IV. Conclusion**

Hortica does not owe PNC a duty to pay for losses resulting from the vandalism and destruction of PNC property allegedly committed by Mr. Aydani in early 2008, after the Policy expired. Accordingly, Plaintiff Hortica's Motion for Partial Summary Judgment (Doc. 168) is **GRANTED in PART** with respect to PNC's counterclaim for compensation arising from acts of vandalism, Doc. 149, ¶¶ 58-62. The Motion is **DENIED in PART** with respect to Hortica's duty to pay for losses resulting from Mr. Aydani's alleged theft or embezzlement from PNC. The Motion is also **DENIED in PART** with respect to the limitation of $5,000 on coverage for all loss caused by Mr. Aydani's alleged theft or embezzlement.

Trial in this matter remains set for the week of October 17, 2011.

**IT IS SO ORDERED** this 22nd day of August 2011.

                                        /s/ Robert T. Dawson
                                        Robert T. Dawson
                                        United States District Judge